BRYAN SCHRODER
United States Attorney

KELLY CAVANAUGH
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-6011
Email: kelly.cavanaugh@usdoj.gov

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. |
| | ) | |
| Plaintiff, | ) | **VERIFIED COMPLAINT FOR** |
| | ) | **FORFEITURE *IN REM*** |
| vs. | ) | |
| | ) | |
| $6,672.00 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff United States of America, by and through counsel, alleges the following:

I.   **NATURE OF THE ACTION**

This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6), for the forfeiture of $6,672.00 IN UNITED STATES CURRENCY, which is hereby alleged to constitute moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange,

and moneys used or intended to be used to facilitate violations of 21 U.S.C. §§ 841, *et seq*.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881. This is a forfeiture proceeding based upon violations of 21 U.S.C. §§ 841 and 881.

The Court has venue pursuant to 28 U.S.C. § 1395. Defendant $6,672.00 was seized within the District of Alaska.

## III. RELEVANT FACTS

The facts and circumstances supporting the seizure and forfeiture of Defendant $6,672.00 are contained in Exhibit 1, Affidavit of Drug Enforcement Administration Special Agent Thanh T. Churchin, which is attached hereto and fully incorporated herein by reference.

Defendant $6,672.00 represents proceeds of, and was intended to be used or was used to facilitate, an illegal marijuana drug trafficking operation; and as such, Defendant $6,672.00 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## IV. CLAIM FOR RELIEF

WHEREFORE, Plaintiff United States of America prays that:

1. A Warrant *In Rem* issue for the arrest of Defendant $6,672.00 IN UNITED STATES CURRENCY;

2. That due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. That judgment be entered declaring Defendant $6,672.00 IN UNITED STATES CURRENCY forfeited to the United States of America for disposition according to law; and

4. For such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED June 12, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

*/s/Kelly Cavanaugh*
KELLY CAVANAUGH
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-6011
Email: kelly.cavanaugh@usdoj.gov

## VERIFICATION

I have read the above complaint and know its contents. The matters stated in the complaint are true based upon my own knowledge, or are alleged upon information and belief and I believe them to be true.

I declare under penalty of perjury that the foregoing statement is true and correct.

EXECUTED on June 12, 2019 in Anchorage, Alaska.

Thanh T. Churchin
Drug Enforcement Administration

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing VERIFIED COMPLAINT FOR FORFEITURE, together with the Notice of Judicial Forfeiture, were sent via Certified U.S. Mail, Return Receipt Requested, this 18th day of June 2019 to:



Pearl Savage
400 Ketchikan Avenue
Fairbanks, AK 99701

s/ Kelly Cavanaugh
Office of the United States Attorney

Notary Public in and for the
State of Alaska
my Commission Expires: 07/31/2021

U.S. v. $6,672.00 IN UNITED STATES CURRENCY
Verified Complaint for Forfeiture *In Rem*

4

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. |
| Plaintiff, | ) |
| vs. | ) **AFFIDAVIT OF DEA SA** |
| | ) **THANH CHURCHIN IN** |
| $6,672.00 IN UNITED STATES CURRENCY, | ) **SUPPORT OF VERIFIED** |
| | ) **COMPLAINT FOR** |
| Defendants(s). | ) **FORFEITURE IN REM** |

I, Thanh T. Churchin, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (hereinafter referred to as DEA) assigned to the Fairbanks Post of Duty, Fairbanks, Alaska. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Special Agent with DEA since 1995. During my law enforcement experience, I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, made numerous arrests, and reviews and analyses of taped conversations and records of drug traffickers. Through my training, education, and experience, which has included debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, investigation, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for

1

such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement, as well as methods used to finance drug transactions and launder drug proceeds.

2. In my experience and the experience of other Agents and Law Enforcement Officers with whom I have consulted, I know that the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers do not always maintain a fully stocked cache of controlled substances at all times, and further, that many traffickers amass drug trafficking proceeds over a period of time until they are prepared to make payment for a shipment of drugs and/or pay a debt owed for drugs previously received for distribution.

3. Furthermore, drug traffickers commonly carry large amounts of currency on their person, or maintain a large amount of currency in a location readily available to them. Because of the nature of maintaining and administrating a drug trafficking enterprise, it is common for drug proceeds from sales to be either carried by the individual trafficker on their person, or cached at a site where the funds are readily available to them. Further, drug traffickers commonly carry large amounts of currency on their person, or have the currency readily available in order to purchase or restock illicit drugs for distribution.

4. Based on my training and experience and the training and experience of other

Agents and Law Enforcement Officers with whom I have consulted, I know that persons who obtain income from illegal sources frequently structure their financial activities in such a manner as to hide and launder the proceeds by, among others, the following means:

    a) Creating entities that provide the façade of a legitimate business and source of income, through which proceeds from illegal sources can be laundered;

    b) Placing bank accounts in names of these business or other individuals through which to funnel money; and

    c) Structuring financial transactions in attempt to avoid Currency Transaction Reporting requirements.

5. I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts contained herein. This affidavit does not include all the information known to for the issuance me regarding this investigation, but only the information necessary to establish probable cause that the seized $6,672.00 in U.S. Currency is proceeds of, and was intended to be used or was used to be used in furtherance of drug trafficking. I believe said property is also subject to forfeiture to the United States as proceeds of drug trafficking or property used or intended to be used to facilitate drug trafficking under 21 U.S.C. Section 881(a)(6) based on violations of 21 U.S.C. Section 841(a)(1).

6. The $6,672.00 in U.S. Currency was seized from Pearl Lee SAVAGE, who has been documented in several investigations dating back to 2014, as being involved in the distribution of heroin, methamphetamine, and cocaine in Fairbanks, Alaska. The information on SAVAGE came from proffer interviews of four cooperating defendants involved in the

3

distributions of narcotics in Fairbanks, Alaska and from a Confidential Source, identifying SAVAGE as buying narcotics and distributing narcotics in Fairbanks. Criminal history on SAVAGE showed that she has prior state drug convictions: controlled substance 4 possess scheduled IA, IIA, on 12-20-05 (Court Docket 4FA-05-2530), controlled substance 4-possess scheduled IIA and controlled substance 4-possess scheduled IIA on 01-15-2015 (Court Docket 4FA-14-3135). Intelligence on SAVAGE in 2018 was that she was still involved in the distribution of heroin, methamphetamine, and cocaine in Fairbanks, Alaska. SAVAGE makes trips to Anchorage, Alaska and possibly Seattle, Washington to obtain the narcotics and transport the narcotics back to Fairbanks for distribution. It is therefore believed that SAVAGE takes money to Anchorage or Seattle to purchase the narcotics.

7. On November 16, 2018, at approximately 1:06 AM, Fairbanks Airport Police Officers Cody Taylor and Cameron Glodowski made contact with Savage at the Fairbanks International Airport as requested by Transportation Security Administration (TSA). TSA wanted confirmation on the identity of Savage, who was traveling from Fairbanks, Alaska to Seattle, Washington with boarding pass, identification, and name on checked luggage not matching. SAVAGE was scheduled to be on Alaska Airlines flight 128 with a departure time of 1:20 AM. SAVAGE provided an Alaska ID with the name of Pearl SAVAGE, but the boarding pass and luggage tags were in the name of Pearl SABHAE.

8. Prior to making contact with SAVAGE, Officer Taylor conducted a record check on SAVAGE and confirmed an outstanding state warrant for her arrest, a $20,000.00 warrant for failing to comply with her conditions of probation in Case 4FA-14-3135 for Misconduct Involving Controlled Substances. When contact was made and asked by Officer Taylor, SAVAGE provided an Alaska State ID identifying herself as Pearl SAVAGE and stated that

4

she was aware of the warrant for her. Officers Taylor and Glodowski arrested SAVAGE on the probation warrant and contacted the on call State Probation Officer Heather Mobley to advise that they have SAVAGE in custody. Probation Officer Mobley requested that SAVAGE's person, property and luggage be searched for evidence of alcohol, controlled substances, drug paraphernalia and prohibited weapons. Officer Taylor searched the purse which revealed additional ID's bearing different names, scrap papers names and contact information, large amounts of currency, estimated to be about $7,500.00 in $100.00, $20.00, $10.00, and $1.00 bills. One Alaska State ID card was in the name of Jessica Elaine Roberts with the DOB: 02-27-1989, and the second ID card was in name of Trudy Rae Mutchler, DOB: 11-02-1968. The purse and currency were secured at the Fairbanks Airport Police Department. The three bags of luggage were not searched at the time because Alaska Airlines had not released the luggage. SAVAGE was transported to Fairbanks Correction Center and remanded on her warrant.

9. At time of incident with SAVAGE, DEA Task Force Officer (TFO) Byron Johnson, who was familiar with the narcotics activities of SAVAGE, was contacted by Fairbanks International Airport Sergeant Daniel Pratt just as TFO Johnson was on his way home from a shift at the Fairbanks International Airport and was unable to respond back to the airport as requested with Officer K-9 Pakak. TFO Johnson asked that the currency and purse be secured until he can respond to the airport. At approximately 9:15 AM that morning, TFO Johnson with Officer K-9 Pakak returned to the Fairbanks Airport International Police and Fire Department. Officer K-9 Pakak conducted a sniff of the currency and indicated a positive hit for the odor of narcotics. The currency was seized and left with the Fairbanks International Airport Police Department until TFO Johnson could get a witness for the

5

seizure/transportation of the currency. At this time, Alaska Airlines had not released the luggage to the Fairbanks Airport Police Department.

10. Once Alaska Airlines had released the luggage, TFO Byron Johnson returned to that airport at 4:00 PM on 11-16-2019 and directed Officer K-9 Pakak to conduct a sniff on the three pieces of luggage and Officer K-9 Pakak indicated a positive hit for the odor of narcotics on luggage with tag #7027AS775903, referred to as luggage number 2. The other two luggage bags, identified as #1 and #3, were negative for narcotics. All three bags of luggage bared the name of Pearl SABHAE. **Officer K-9 Pakak is certified and trained to detect for the odors of methamphetamine, heroin and cocaine.**

11. Shortly thereafter, Fairbanks International Airport Police Officer Travis Brown released the currency to Task Force Officer Johnson and Special Agent Michael Short for administrative seizure. The currency, which was not counted, it was sealed in a SSEE #ES000992952 at the Fairbanks International Airport by Task Force Officer Johnson and Special Agent Short, witnessed by Officer Brown. The currency was then transported to Wells Fargo Bank by Task Force Officer Johnson and Special Agent Short and converted to Cashier's Check #019240159 with pay to the order of the U.S. Marshals Service in the amount of $6,672.00 U.S. Currency. The denominations are as follow: 63 $100.00 bills ($6,300.00), 16 $20.00 bills ($320.00), 5 $10 bills ($50.00), and 2 $1.00 bills ($2.00). The Cashier's check was processed as Exhibit N-2 and secured in the HVSRM safe at the Fairbanks Post of Duty, along with the original SSEE for the currency. On November 20, 2018, Group Supervisor Thanh Churchin removed the referenced items from the HVSRM safe and FedEx the items to the Anchorage District Officer HVSRM custodian with tracking number #783891952622.

6

12. Due to the length of time between verbal request of the probation officer and the release of the three luggage by Alaska Airlines, an Alaska State Search Warrant #3AN-18-3553SW was obtained by Fairbanks International Airport Police Officer Taylor for the three luggage and purse and executed on November 19, 2018. Drug paraphernalia were seized from the three luggage and miscellaneous documents from the purse.

13. On 11-26-2018, I contacted SAVAGE's Alaska state Probation Officer Eric Korhoren, who stated that SAVAGE was scheduled to be released on December 16, 2018 from Fairbanks Correctional Center and scheduled to report to him on December 17, 2018. Probation Officer Korhoren stated that SAVAGHE has a history of not reporting to the Probation Office. On a subsequent contact with Probation Officer Korhoren on 04-04-2019, he stated that an **outstanding warrant for probation violation was issued on SAVAGE on 01-15-2019.** Probation Officer Korhoren stated that he has supervised SAVAGE since 2017 and that SAVAGE has reported "no income" since 2017. Probation Officer Korhoren recalled SAVAGE saying that she couldn't find a job. Probation Officer Korhoren also stated that when SAVAGE was arrested at the airport on 11-16-2018, SAVAGE was not authorized to travel to Seattle, Washington. As of date, SAVAGE is still a state fugitive.

14. Based upon the foregoing, I believe there is probable cause that the seized $6,672.00 U.S. Currency is proceeds of, and was intended to be used or was used to facilitate drug trafficking activities by SAVAGE and subject to forfeiture to the United States, pursuant to Title 21, United States Code Sections 881(a)(6).

I declare that the foregoing is true and correct to the best of my knowledge and belief.

EXECUTED on June 12, 2019 in Fairbanks, Alaska



_____
SPECIAL AGENT THANH T. CHURCHIN
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to me before this 12 day of June, 2019, in Fairbanks, Alaska

_____
NOTARY PUBLIC, State of Alaska
My commission expires:
07/31/2021

8

| UNITED STATES OF AMERICA, | ) No. |
| --- | --- |
| Plaintiff, | ) |
| | ) |
| vs. | ) **AFFIDAVIT OF DEA SA** |
| | ) **THANH CHURCHIN IN** |
| $6,672.00 IN UNITED STATES CURRENCY, | ) **SUPPORT OF VERIFIED** |
| | ) **COMPLAINT FOR** |
| Defendants(s). | ) **FORFEITURE IN REM** |

I, Thanh T. Churchin, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (hereinafter referred to as DEA) assigned to the Fairbanks Post of Duty, Fairbanks, Alaska. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Special Agent with DEA since 1995. During my law enforcement experience, I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, made numerous arrests, and reviews and analyses of taped conversations and records of drug traffickers. Through my training, education, and experience, which has included debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, investigation, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for

1

such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement, as well as methods used to finance drug transactions and launder drug proceeds.

2. In my experience and the experience of other Agents and Law Enforcement Officers with whom I have consulted, I know that the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers do not always maintain a fully stocked cache of controlled substances at all times, and further, that many traffickers amass drug trafficking proceeds over a period of time until they are prepared to make payment for a shipment of drugs and/or pay a debt owed for drugs previously received for distribution.

3. Furthermore, drug traffickers commonly carry large amounts of currency on their person, or maintain a large amount of currency in a location readily available to them. Because of the nature of maintaining and administrating a drug trafficking enterprise, it is common for drug proceeds from sales to be either carried by the individual trafficker on their person, or cached at a site where the funds are readily available to them. Further, drug traffickers commonly carry large amounts of currency on their person, or have the currency readily available in order to purchase or restock illicit drugs for distribution.

4. Based on my training and experience and the training and experience of other

2

Agents and Law Enforcement Officers with whom I have consulted, I know that persons who obtain income from illegal sources frequently structure their financial activities in such a manner as to hide and launder the proceeds by, among others, the following means:

    a) Creating entities that provide the façade of a legitimate business and source of income, through which proceeds from illegal sources can be laundered;

    b) Placing bank accounts in names of these business or other individuals through which to funnel money; and

    c) Structuring financial transactions in attempt to avoid Currency Transaction Reporting requirements.

    5. I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts contained herein. This affidavit does not include all the information known to for the issuance me regarding this investigation, but only the information necessary to establish probable cause that the seized $6,672.00 in U.S. Currency is proceeds of, and was intended to be used or was used to be used in furtherance of drug trafficking. I believe said property is also subject to forfeiture to the United States as proceeds of drug trafficking or property used or intended to be used to facilitate drug trafficking under 21 U.S.C. Section 881(a)(6) based on violations of 21 U.S.C. Section 841(a)(1).

    6. The $6,672.00 in U.S. Currency was seized from Pearl Lee SAVAGE, who has been documented in several investigations dating back to 2014, as being involved in the distribution of heroin, methamphetamine, and cocaine in Fairbanks, Alaska. The information on SAVAGE came from proffer interviews of four cooperating defendants involved in the

distributions of narcotics in Fairbanks, Alaska and from a Confidential Source, identifying SAVAGE as buying narcotics and distributing narcotics in Fairbanks. Criminal history on SAVAGE showed that she has prior state drug convictions: controlled substance 4 possess scheduled IA, IIA, on 12-20-05 (Court Docket 4FA-05-2530), controlled substance 4-possess scheduled IIA and controlled substance 4-possess scheduled IIA on 01-15-2015 (Court Docket 4FA-14-3135). Intelligence on SAVAGE in 2018 was that she was still involved in the distribution of heroin, methamphetamine, and cocaine in Fairbanks, Alaska. SAVAGE makes trips to Anchorage, Alaska and possibly Seattle, Washington to obtain the narcotics and transport the narcotics back to Fairbanks for distribution. It is therefore believed that SAVAGE takes money to Anchorage or Seattle to purchase the narcotics.

7. On November 16, 2018, at approximately 1:06 AM, Fairbanks Airport Police Officers Cody Taylor and Cameron Glodowski made contact with Savage at the Fairbanks International Airport as requested by Transportation Security Administration (TSA). TSA wanted confirmation on the identity of Savage, who was traveling from Fairbanks, Alaska to Seattle, Washington with boarding pass, identification, and name on checked luggage not matching. SAVAGE was scheduled to be on Alaska Airlines flight 128 with a departure time of 1:20 AM. SAVAGE provided an Alaska ID with the name of Pearl SAVAGE, but the boarding pass and luggage tags were in the name of Pearl SABHAE.

8. Prior to making contact with SAVAGE, Officer Taylor conducted a record check on SAVAGE and confirmed an outstanding state warrant for her arrest, a $20,000.00 warrant for failing to comply with her conditions of probation in Case 4FA-14-3135 for Misconduct Involving Controlled Substances. When contact was made and asked by Officer Taylor, SAVAGE provided an Alaska State ID identifying herself as Pearl SAVAGE and stated that

4

she was aware of the warrant for her. Officers Taylor and Glodowski arrested SAVAGE on the probation warrant and contacted the on call State Probation Officer Heather Mobley to advise that they have SAVAGE in custody. Probation Officer Mobley requested that SAVAGE's person, property and luggage be searched for evidence of alcohol, controlled substances, drug paraphernalia and prohibited weapons. Officer Taylor searched the purse which revealed additional ID's bearing different names, scrap papers names and contact information, large amounts of currency, estimated to be about $7,500.00 in $100.00, $20.00, $10.00, and $1.00 bills. One Alaska State ID card was in the name of Jessica Elaine Roberts with the DOB: 02-27-1989, and the second ID card was in name of Trudy Rae Mutchler, DOB: 11-02-1968. The purse and currency were secured at the Fairbanks Airport Police Department. The three bags of luggage were not searched at the time because Alaska Airlines had not released the luggage. SAVAGE was transported to Fairbanks Correction Center and remanded on her warrant.

9. At time of incident with SAVAGE, DEA Task Force Officer (TFO) Byron Johnson, who was familiar with the narcotics activities of SAVAGE, was contacted by Fairbanks International Airport Sergeant Daniel Pratt just as TFO Johnson was on his way home from a shift at the Fairbanks International Airport and was unable to respond back to the airport as requested with Officer K-9 Pakak. TFO Johnson asked that the currency and purse be secured until he can respond to the airport. At approximately 9:15 AM that morning, TFO Johnson with Officer K-9 Pakak returned to the Fairbanks Airport International Police and Fire Department. Officer K-9 Pakak conducted a sniff of the currency and indicated a positive hit for the odor of narcotics. The currency was seized and left with the Fairbanks International Airport Police Department until TFO Johnson could get a witness for the

5

seizure/transportation of the currency.  At this time, Alaska Airlines had not released the luggage to the Fairbanks Airport Police Department.

10. Once Alaska Airlines had released the luggage, TFO Byron Johnson returned to that airport at 4:00 PM on 11-16-2019 and directed Officer K-9 Pakak to conduct a sniff on the three pieces of luggage and Officer K-9 Pakak indicated a positive hit for the odor of narcotics on luggage with tag #7027AS775903, referred to as luggage number 2. The other two luggage bags, identified as #1 and #3, were negative for narcotics. All three bags of luggage bared the name of Pearl SABHAE. **Officer K-9 Pakak is certified and trained to detect for the odors of methamphetamine, heroin and cocaine.**

11. Shortly thereafter, Fairbanks International Airport Police Officer Travis Brown released the currency to Task Force Officer Johnson and Special Agent Michael Short for administrative seizure. The currency, which was not counted, it was sealed in a SSEE #ES000992952 at the Fairbanks International Airport by Task Force Officer Johnson and Special Agent Short, witnessed by Officer Brown. The currency was then transported to Wells Fargo Bank by Task Force Officer Johnson and Special Agent Short and converted to Cashier's Check #019240159 with pay to the order of the U.S. Marshals Service in the amount of $6,672.00 U.S. Currency. The denominations are as follow: 63 $100.00 bills ($6,300.00), 16 $20.00 bills ($320.00), 5 $10 bills ($50.00), and 2 $1.00 bills ($2.00). The Cashier's check was processed as Exhibit N-2 and secured in the HVSRM safe at the Fairbanks Post of Duty, along with the original SSEE for the currency. On November 20, 2018, Group Supervisor Thanh Churchin removed the referenced items from the HVSRM safe and FedEx the items to the Anchorage District Officer HVSRM custodian with tracking number #783891952622.

6

12. Due to the length of time between verbal request of the probation officer and the release of the three luggage by Alaska Airlines, an Alaska State Search Warrant #3AN-18-3553SW was obtained by Fairbanks International Airport Police Officer Taylor for the three luggage and purse and executed on November 19, 2018. Drug paraphernalia were seized from the three luggage and miscellaneous documents from the purse.

13. On 11-26-2018, I contacted SAVAGE's Alaska state Probation Officer Eric Korhoren, who stated that SAVAGE was scheduled to be released on December 16, 2018 from Fairbanks Correctional Center and scheduled to report to him on December 17, 2018. Probation Officer Korhoren stated that SAVAGHE has a history of not reporting to the Probation Office. On a subsequent contact with Probation Officer Korhoren on 04-04-2019, he stated that an **outstanding warrant for probation violation was issued on SAVAGE on 01-15-2019.** Probation Officer Korhoren stated that he has supervised SAVAGE since 2017 and that SAVAGE has reported "no income" since 2017. Probation Officer Korhoren recalled SAVAGE saying that she couldn't find a job. Probation Officer Korhoren also stated that when SAVAGE was arrested at the airport on 11-16-2018, SAVAGE was not authorized to travel to Seattle, Washington. As of date, SAVAGE is still a state fugitive.

14. Based upon the foregoing, I believe there is probable cause that the seized $6,672.00 U.S. Currency is proceeds of, and was intended to be used or was used to facilitate drug trafficking activities by SAVAGE and subject to forfeiture to the United States, pursuant to Title 21, United States Code Sections 881(a)(6).

I declare that the foregoing is true and correct to the best of my knowledge and belief.

EXECUTED on June 12, 2019 in Fairbanks, Alaska



_____
SPECIAL AGENT THANH T. CHURCHIN
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to me before this 12 day of June, 2019, in Fairbanks, Alaska

_____
NOTARY PUBLIC, State of Alaska
My commission expires:
07/31/2021

8